Michael DOWNEY et al.

v.

Governor Donald L. CARCIERI et al.

No. 2009–79–Appeal.

Supreme Court of Rhode Island.

June 16, 2010.

Carly Beauvais Iafrate, Esq., for Plaintiff.

Daniel W. Majcher, Esq., for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, and
ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The defendants, Governor Donald L. Carcieri and the directors of twelve state agencies, appeal from a judgment entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure in favor of the plaintiffs, Michael Downey and Rhode Island Council 94, A.F.S.C.M.E., AFL–CIO. The plaintiffs brought this action pursuant to the Access to Public Records Act, G.L.1956 chapter 2 of title 38 (APRA),

and the Government Oversight and Fiscal Accountability Review Act, G.L.1956 chapter 2.3 of title 37, as enacted by P.L.2006, chs. 172, 646 (GOFARA), under which the plaintiffs sought records relating to state-agency-privatization contracts. The defendants contend that the Superior Court justice erred in ruling that the plaintiffs were not required to exhaust administrative remedies prior to instituting this suit. The defendants also assert that the Superior Court justice erred in deciding that, under the GOFARA, the state was required to determine whether services now performed by private contractors were formerly performed by agency personnel at any time in the past. Finally, the defendants contend that the Superior Court justice erred in awarding attorneys' fees to the plaintiffs.

We heard argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties, we are of the opinion that further briefing or argument is unnecessary. For the reasons set forth below, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

In June 2006, the General Assembly enacted the Government Oversight and Fiscal Accountability Review Act, overriding a prior gubernatorial veto. In adopting the GOFARA, the General Assembly found and declared:

"that using private contractors to provide public services normally provided by public employees does not always promote the public interest. To ensure that citizens of this state receive high quality public services at low costs, with due regard for the taxpayers of this state, and the service recipients, the legislature finds it necessary to ensure that access to public information guaranteed by the access to public records act is not in any way hindered by the fact that public services are provided by private contractors." Section 37–2.3–2.

Section 37–2.3–4(3) of the GOFARA provides that state agencies must include an addendum to their budget requests listing all privatization contracts. The addendum also must "contain a summary of contracted private contractor employees for each contract, reflected as full-time equivalent positions, their hourly wage rate, and the number of private contractor employees and consultants for the current and previous fiscal year." *Id.* The section finally provides: "The addendums [*sic*] shall be open records." *Id.*

In February 2007, former Executive Director of Rhode Island Council 94 Dennis R. Grilli sent a letter to the Governor requesting "[e]ach State Agency addendum to their submitted budget requests listing all privatization contracts with the required information." On March 6, 2007, the Governor's executive counsel responded that the Office of the Governor did not maintain in its possession the public records requested and referred Mr. Grilli to the State Budget Office within the Rhode Island Department of Administration (DOA), or alternatively to the individual state agencies.

The next day, Mr. Grilli sent a letter to then-DOA Director Beverley E. Najarian requesting the same records. On March 26, 2007, a DOA attorney responded that "the [DOA] does not have any of the documents set forth in your request." In their brief to this Court, defendants assert that the DOA did not possess the budget addenda requested by plaintiffs because "the GOFARA statute passed June 23, 2006 and the budget submissions were due in

September 2006. As the agency [interpreted the GOFARA as operating only] on a prospective basis * * * there were no such privatization contracts during this limited time period."

On May 17, 2007, plaintiffs filed the instant action in the Superior Court naming the Governor and the directors of twelve state agencies as defendants. The complaint requested (1) a writ of mandamus directing defendants to create, maintain, and provide the privatization addenda; (2) mandatory injunctive relief with regard to the creation and production of the privatization records; and (3) a declaratory judgment to the effect that defendants were obligated to compile and/or produce the records requested pursuant to the GOFARA. The plaintiffs further sought any other relief the Superior Court deemed appropriate, including attorneys' fees and costs.

In response, defendants maintained that plaintiffs' lawsuit was premature because plaintiffs had failed to exhaust their administrative remedies under the APRA. Moreover, they argued that plaintiffs lacked standing to bring suit because they failed to allege any harm. Finally, defendants challenged plaintiffs' proposed interpretation of the GOFARA as unreasonable and overbroad.

The Superior Court justice based her decision upon the memoranda filed by the parties; there were no oral arguments or evidentiary hearings in the matter. She issued a written decision in the case on November 5, 2008. In that decision, she concluded that state agencies were required to provide information about privatization contracts valued at $100,000 or more so long as the contracts concerned services that previously were provided by public employees. She specifically noted that the statute "does not place any time restrictions upon how far back in the past

one should look to determine whether the services once were provided by agency employees."

On the issue of exhaustion of administrative remedies, the Superior Court justice interpreted § 38–2–8 of the APRA as permitting a party to pursue administrative remedies but not requiring that they be pursued. She emphasized that the section provides that a person "may" petition the chief administrative officer to review a denial of access to records and then "may" file a complaint with the Attorney General if the chief administrative officer determines that the record is not subject to disclosure. The statute also specifically states that "[n]othing within [the] section shall prohibit any individual from retaining private counsel for the purpose of instituting proceedings for injunctive or declaratory relief in the [S]uperior [C]ourt * * *." Section 38–2–8(b). The Superior Court justice therefore deemed such legal proceedings to be an alternate remedy. In addition, she ruled that it would have been futile to require plaintiffs to exhaust administrative remedies because both the Governor's office and the DOA denied that they possessed the documents sought by plaintiffs, and futility is a recognized exception to the doctrine of exhaustion of administrative remedies.

On the issue of standing under the APRA, the Superior Court justice concluded that plaintiffs had standing to bring the instant action. Section 38–2–3(a) provides that "every person or entity shall have the right to inspect and/or copy [public] records * * *." Because the denial of access to a public record could itself constitute harm, the Superior Court justice found that plaintiffs had standing under the APRA.

The Superior Court justice next concluded that § 37–2.3–3(5) of the GOFARA was unambiguous and that its plain and ordi-

nary meaning therefore must be given effect. She noted that under § 37–2.3–3(5) (2006 enactment) a privatization contract is defined as "an agreement" between "a non-governmental person or entity" and an agency "to provide services, valued at one hundred thousand dollars ($100,000) or more, which are substantially similar to and in lieu of, services heretofore provided, in whole or in part, by regular employees of an agency." Upon consideration of various dictionary definitions, the Superior Court justice concluded that the term "heretofore," as used in the statute, generally means "in the past, or formerly." She therefore ruled that the GOFARA reporting and disclosure requirements encompassed privatization contracts concerning services that were provided by agency employees at any time in the past. The Superior Court justice further ruled that, by its plain language, the GOFARA applied retroactively to the year before it was enacted.

The Superior Court justice granted plaintiffs declaratory relief and ruled in their favor on the APRA claim. She ordered defendants to compile and the Governor's office and/or the DOA to release privatization contract addenda for each budget request submitted since June 23, 2006. In light of this declaratory relief, she stated that plaintiffs had an adequate remedy at law and declined to grant their requests for injunctive relief and a writ of mandamus. Although the Superior Court

justice recognized that there was no evidence that defendants had willfully or knowingly violated the requirements of the APRA, she nevertheless awarded attorneys' fees to plaintiffs.

On November 25, 2008, a hearing was held before the Superior Court justice to clarify any ambiguities in her decision. The Superior Court justice ruled that defendants must respond to requests made by plaintiffs with regard to the privatization records and must release those addenda within sixty days.[1] A final judgment in the matter was entered on January 2, 2009.

Thereafter, on January 6, 2009,[2] the Superior Court justice issued an order in accordance with her decision, stating, in pertinent part, that (1) plaintiffs were not required to exhaust administrative remedies before filing an action for declaratory judgment in the Superior Court; (2) the GOFARA governs any privatization contract concerning services that were performed by agency employees, in whole or in part, at any time in the past; and (3) plaintiffs were entitled to legal fees, subject to a hearing on the reasonableness of the fees and the amount sought.

Another hearing was held before the Superior Court justice on January 8, 2009. At this hearing the Superior Court justice granted a motion for entry of partial final judgment[3] pursuant to Rule 54(b).[4] She

---

1. The Superior Court justice also clarified the portion of her written decision in which she denied plaintiffs' request for a writ of mandamus. She noted that, in accordance with her declaratory judgment in favor of plaintiffs, defendants were ordered to respond to the public-record requests previously submitted by plaintiffs and to release all pertinent records. In light of that order, a writ of mandamus to the same effect would be redundant and moot.

2. An initial order entered in error on November 18, 2008, later was vacated by the Superior Court justice, and was replaced by a corrected order on January 6, 2009.

3. Judgment was partial because the issue of the reasonableness of plaintiffs' attorneys' fees was still outstanding.

4. We were unable to locate defendants' motion for partial final judgment in the record; however, the Superior Court justice referred to it during the hearing on January 8, 2009.

also noted that it would be necessary for a corrected judgment to be entered and denied the state's motion to stay judgment pending appeal. A corrected partial final judgment was entered on January 27, 2009, from which defendants appeal.[5]

## II

### Standard of Review

 "A Superior Court decision granting or denying declaratory relief is reviewed with great deference by this Court." *Providence Lodge No. 3, Fraternal Order of Police v. Providence External Review Authority,* 951 A.2d 497, 502 (R.I. 2008). When deciding an action for declaratory judgment, a Superior Court justice makes all findings of fact without a jury. *Fleet National Bank v. 175 Post Road, LLC,* 851 A.2d 267, 273 (R.I.2004). Such factual findings are afforded great weight by this Court, "and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Id.* (quoting *Casco Indemnity Co. v. O'Connor,* 755 A.2d 779, 782 (R.I.2000)). "A trial justice's findings on questions of law, however, are reviewed *de novo.*" *Fleet National Bank,* 851 A.2d at 273. Likewise, we review questions of statutory construction *de novo. State v. LaRoche,* 925 A.2d 885, 887 (R.I.2007).

## III

### Discussion

On appeal, defendants raise several arguments. First, they contend that plaintiffs should have exhausted their administrative remedies before filing the instant action in the Superior Court. The defendants argue that exhausting administrative remedies is a two-step process under § 38–2–8 whereby an individual or entity seeking public records first must appeal to the chief administrative officer of the agency and then appeal to the Attorney General if the chief administrative officer denies access to the requested public records. Only after pursuing this administrative relief may a party file an action in the Superior Court, defendants suggest.

The defendants further argue that the Superior Court justice misinterpreted the scope of the GOFARA. Specifically, defendants argue that the Superior Court justice's decision that the statute applies to any services performed by agency employees at any time in the past creates an absurd result contrary to the intentions of the General Assembly. The defendants instead suggest that the statute's focus is prospective and that it requires the reporting of privatization contracts concerning services performed by public employees as of the date of the statute's enactment.

Finally, defendants argue that an award of attorneys' fees to plaintiffs was not appropriate. The defendants contend that the Superior Court justice should have applied the standard for awarding attorneys' fees in a declaratory-judgment action, not under the APRA. Further, defendants suggest that, because the Superior Court justice found that there was no evidence of a knowing and willful violation of the APRA, an award of attorneys' fees was unwarranted.

---

5. The defendants filed a premature notice of appeal on January 5, 2009, before the hearing on the motion for partial final judgment. Because partial final judgment later was entered, the state's appeal is valid. *See Holden v. Salvadore,* 964 A.2d 508, 512 n. 6 (R.I.2009)

("Although [the] plaintiff's appeal was premature, it is nevertheless valid because judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure actually was entered.").

## A

### Exhaustion of Administrative Remedies

The defendants contend that under § 38–2–8 of the APRA plaintiffs were required to exhaust administrative remedies before filing the instant action in the Superior Court. They suggest that the issue of whether plaintiffs had a right to inspect the records first should have been decided by the director of the DOA and then appealed to the Attorney General. The plaintiffs respond that the APRA specifically permits suits for injunctive and declaratory relief and that exhaustion of administrative remedies is not a requirement in a declaratory-judgment action. Moreover, plaintiffs argue that the administrative remedies set forth in § 38–2–8 are not mandatory. Indeed, plaintiffs suggest that pursuing administrative remedies in this case would have been futile because both the Governor's office and the DOA denied the very existence of the records in question.

 Statutory construction "is a matter reserved for the courts, * * * and, as final arbiter on questions of construction, it is this [C]ourt's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987). This is accomplished by "an examination of the language, nature, and object of the statute." *Berthiaume v. School Committee of Woonsocket,* 121 R.I. 243, 247, 397 A.2d 889, 892 (1979). It is well established that "when the language of a statute is clear and unambiguous, [this Court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Liberty Mutual Insurance Co. v. Kaya,* 947 A.2d 869, 872 (R.I. 2008) (quoting *LaRoche,* 925 A.2d at 887).

Section 38–2–8 provides in pertinent part as follows:

"(a) Any person or entity denied the right to inspect a record of a public body by the custodian of the record may petition the chief administrative officer of that public body for a review of the determinations made by his or her subordinate. The chief administrative officer shall make a final determination whether or not to allow public inspection within ten (10) business days after the submission of the review petition.

"(b) If the chief administrative officer determines that the record is not subject to public inspection, the person or entity seeking disclosure may file a complaint with the attorney general. The attorney general shall investigate the complaint and if the attorney general shall determine that the allegations of the complaint are meritorious, he or she may institute proceedings for injunctive or declaratory relief on behalf of the complainant in the [S]uperior [C]ourt of the county where the record is maintained. Nothing within this section shall prohibit any individual or entity from retaining private counsel for the purpose of instituting proceedings for injunctive or declaratory relief in the [S]uperior [C]ourt of the county where the record is maintained."

 As a general rule, "a plaintiff first must exhaust his [or her] administrative remedies before seeking judicial review of an administrative decision." *Almeida v. Plasterers' & Cement Masons' Local 40 Pension Fund,* 722 A.2d 257, 259 (R.I.1998). This is because "exhaustion of administrative remedies (1) 'aids judicial review by allowing the parties and the agency to develop the facts of the case, and (2) it promotes judicial economy by avoiding needless repetition of administra-

tive and judicial factfinding, perhaps avoiding the necessity of any judicial involvement.'" *Doe v. East Greenwich School Department,* 899 A.2d 1258, 1266 (R.I.2006) (quoting *Almeida,* 722 A.2d at 259). Such a requirement will not be imposed, however, in contravention of the plain language and manifest intent of a statute. *See State v. Germane,* 971 A.2d 555, 592 (R.I.2009) ("We will not construe a statute so as to frustrate the clearly expressed intent of the General Assembly.").

■■■ Turning to the language of § 38–2–8, it is clear that the section sets forth various administrative remedies without requiring that they be pursued prior to bringing an action in the Superior Court, as evidenced by the repeated use of the word "may" in the section. It is an axiomatic principle of statutory construction that the use of the term "may" denotes a permissive, rather than an imperative, condition. *See Quality Court Condominium Association v. Quality Hill Development Corp.,* 641 A.2d 746, 751 (R.I.1994) ("[T]he use of the word 'may' rather than the word 'shall' indicates a discretionary rather than a mandatory provision.") (citing *Carlson v. McLyman,* 77 R.I. 177, 182, 74 A.2d 853, 855 (1950) (noting that "the ordinary meaning of the word 'may' is permissive and not compulsive")).

Moreover, the final sentence of § 38–2–8(b) explicitly provides that "[n]othing within this section shall prohibit any individual or entity from retaining private counsel for the purpose of instituting proceedings for injunctive or declaratory relief in the [S]uperior [C]ourt * * *." It is

clear from the foregoing that the General Assembly manifestly intended that those seeking access to public records have recourse to the Superior Court, even without prior exhaustion of alternative, administrative remedies.[6]

■■■ This interpretation is consistent with our well-settled understanding of the General Assembly's intent in adopting the APRA. "[T]his Court has 'long recognized that the underlying policy of the APRA favors the free flow and disclosure of information to the public.'" *In re New England Gas Co.,* 842 A.2d 545, 551 (R.I.2004) (quoting *Providence Journal Co. v. Sundlun,* 616 A.2d 1131, 1134 (R.I.1992)). Allowing requestors to apply to the courts for equitable relief without first pursuing alternate avenues of administrative appeal promotes the public's timely access to government records and is not inconsistent with the General Assembly's intent.

**B**

**Statutory Construction**

■■■ The defendants also challenge the Superior Court justice's conclusions regarding the scope of the privatization contract reporting requirements under the GOFARA. Section 37–2.3–3(5), as enacted by P.L.2006, chs. 172, 646, § 1, of the GOFARA defines a privatization contract as

"an agreement or combination or series of agreements by which a nongovernmental person or entity agrees with an agency to provide services, valued at one hundred thousand dollars ($100,000) or more, which are substantially similar to and in lieu of, *services heretofore provid-*

***

6. This conclusion is not inconsistent with this Court's previous characterization of G.L.1956 § 38–2–8. *See Rhode Island Federation of Teachers, AFT, AFL–CIO v. Sundlun,* 595 A.2d 799, 801 (R.I.1991). In *Rhode Island Federa-* *tion of Teachers,* this Court merely enumerated the various options available to individuals or entities that had been denied access to public records and did not endorse mandatory exhaustion of administrative remedies. *Id.*

ed, in whole or in part, by regular employees of an agency."[7] (Emphasis added.)

The Superior Court justice found that this definition did not place any time restrictions on how far into the past one should look to determine whether the services previously were provided by agency employees. The defendants maintain that by including the phrase "heretofore provided," the General Assembly instead intended that the GOFARA apply only to new privatization contracts entered into after passage of the act. The defendants contend that the state's obligations under the statute as interpreted by the Superior Court justice would be absurd and unduly burdensome because the unlimited historical scope would render the state's review costly and impossible to complete.

We concur with the Superior Court justice's conclusion that the language of § 37–2.3–3(5), as the statute was then constituted, was not ambiguous. The term "heretofore" means "[u]p to now; before this time[.]" Black's Law Dictionary 745 (8th ed. 2004). We are satisfied, therefore, that by the plain and ordinary meaning of its terms, the phrase "services heretofore provided" encompasses all services performed at any time in the past by regular employees of a state agency.

We recognize that defendants have advanced an alternative interpretation of § 37–2.3–3(5) that is both reasonable and seemingly consistent with the overall transparency objectives of the GOFARA.

We conclude, however, as did the Superior Court justice, that the General Assembly spoke in clear and unambiguous language. We also share defendants' concern that the statute's lack of time limitations may render "compliance expensive and well-nigh impossible." We therefore construe the statutory language "heretofore provided" as containing an element of reasonableness. *Cf. Raso v. Wall,* 884 A.2d 391, 395 (R.I.2005) ("[I]t would be absurd to read 'at any time' as constituting a limitless 'Open Sesame' in which an applicant could file an application for postconviction relief at literally *any* time without weight being given to the possible prejudice to the state wrought by the passage of time. Accordingly, we construe the statutory term as meaning at any *reasonable* time."). Since the General Assembly has amended this provision to place specific time restrictions on this definition, however, we decline to opine as to what would constitute a reasonable limitation of § 37–2.3–3(5) under its previous terms.

### C

### Attorneys' Fees

Finally, defendants argue that the Superior Court justice should not have awarded attorneys' fees to plaintiffs. They contend that attorneys' fees are not available in an action for declaratory judgment and that the Superior Court justice incorrectly applied the APRA standard for attorneys' fees and costs. The plaintiffs respond that they filed the instant action under the

---

**7.** This definition has since been amended by the General Assembly. *See* P.L.2008, ch. 121, § 3 (revising the definition of "Privatization or privatization contract" to mean "an agreement or combination or series of agreements by which a non-governmental person or entity agrees with an agency to provide services expected to result in a fiscal year expenditure of at least one hundred fifty thousand dollars ($150,000) (as of July 1 of each year, the amount shall increase to reflect increases in the consumer price index calculated by the United States Bureau of Labor Statistics for all urban consumers nationally during the most recent twelve (12) month period for which data are available or more), which would contract services which are substantially similar to and in replacement of work normally performed by an employee of an agency as of June 30, 2007").

Uniform Declaratory Judgments Act, G.L. 1956 chapter 30 of title 9, the GOFARA, and the APRA, and that the APRA does not require a showing of a willful and knowing violation by defendants for plaintiffs to be entitled to attorneys' fees.

 "This Court adheres to the 'American rule' that litigants generally are responsible for their own attorneys' fees and costs." *Napier v. Epoch Corp.*, 971 A.2d 594, 598 n. 4 (R.I.2009). "However, attorneys' fees may be appropriately awarded, at the discretion of the trial justice, given proper contractual or statutory authorization." *Id.*

 Section 38–2–9(d) of the APRA provides as follows:

"The court shall impose a civil fine not exceeding one thousand dollars ($1,000) against a public body or official found to have committed a knowing and willful violation of this chapter, and shall award reasonable attorney fees and costs to the prevailing plaintiff."

This Court has indicated that a prevailing party under the APRA is entitled to attorneys' fees pursuant to § 38–2–9(d) without a showing of a knowing or willful violation of the act:

"[W]e conclude that the 'knowing and willful' requirement [of § 38–2–9(d) ] is not a consideration when determining whether a court should award attorneys' fees to a prevailing plaintiff. Rather, that language is only relevant for determining whether a court should authorize a $1,000 fine against a 'public body or official.' This interpretation gives effect to the legislative intent that a 'prevailing plaintiff be awarded attorneys' fees * * * with the inquiry focusing only on whether the plaintiff is successful, not the defendant's subjective intent. Furthermore, we believe that the General Assembly's intent in enacting the APRA

would best be served by providing litigants an incentive to bring meritorious claims when they otherwise may be dissuaded from bringing such claims based on the costly nature of hiring competent counsel. If we held that an award of attorneys' fees to the prevailing plaintiff depended on the subjective intent of the defendant, we would discourage the public from bringing such suits and thereby would ignore the stated purpose behind the APRA." *Direct Action for Rights and Equality v. Gannon*, 819 A.2d 651, 660 (R.I.2003).

The plaintiffs were the prevailing parties in an action seeking access to public records under the APRA. Although the plaintiffs also brought other claims, including one for declaratory relief, its action was, in essence, centered on the quest for disclosure of public records. The APRA encourages meritorious claims under the statute by providing the incentive of an award of attorneys' fees for a prevailing party. *Gannon*, 819 A.2d at 660. We therefore discern no error in the Superior Court justice's award of attorneys' fees to the plaintiffs.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.

Justice INDEGLIA took no part in the consideration or decision of this appeal.