**Supreme Court**

No. 2013-198-Appeal.
(P 12-1084-A)

Rosanna Cavanaugh          :

          v.                :

Brian Cavanaugh.           :


NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2013-198-Appeal.
(P 12-1084-A)

Rosanna Cavanaugh            :

v.                           :

Brian Cavanaugh.             :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The defendant, Brian Cavanaugh, has appealed from an order of the Chief Judge of the Family Court affirming the entry of an order by a magistrate of the Family Court restraining and enjoining him from contacting his former wife, Rosanna Cavanaugh (the plaintiff).  It is the contention of the defendant that the magistrate's issuance of a civil restraining order was not authorized by G.L. 1956 chapter 15 of title 15, which chapter is entitled "Domestic Abuse Prevention."  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this appeal may be decided at this time.  For the reasons set forth in this opinion, we affirm the order of the Family Court.

- 1 -

# I

## Facts and Travel

On August 10, 2012, plaintiff filed a complaint in Family Court seeking protection from abuse pursuant to chapter 15 of title 15 of the General Laws. In that complaint, plaintiff alleged that she "suffered abuse when the defendant" "[p]laced [her] in fear of imminent physical harm" and engaged in "Stalking, Cyberstalking, [and/or] Harassing." In support of her complaint, plaintiff filed an affidavit stating that she was in fear of defendant because of his "persistent threatening, swearing, and menacing behavior during pick-up/drop-off times [when they would exchange their child] and phone calls." She asked the court to enjoin defendant "from contacting, assaulting, molesting, or otherwise interfering with [her] * * * ." An ex parte "Temporary Order [for] Protection from Abuse" was entered that same day. The Family Court specified, inter alia, in the order that defendant may contact plaintiff to facilitate visitation and that the exchange of their child (over whom the parties had shared physical custody) should occur at either the North Smithfield, Rhode Island or Franklin, Massachusetts police stations.[1]

## A

### The Hearing on Plaintiff's Complaint for Protection from Abuse

On October 19, 2012, a hearing was held on plaintiff's complaint for protection from abuse before a magistrate of the Family Court, at which plaintiff and defendant both testified.

### 1. The Testimony of Plaintiff

At the hearing, plaintiff testified that she and defendant had formerly been married but that they had divorced in 2011. She further stated that there was one child born of that marriage.

---

[1] At the time of the hearing before the Chief Judge, it was made clear on the record that plaintiff is from North Smithfield, Rhode Island and that defendant is from Franklin, Massachusetts.

The plaintiff testified with respect to multiple occasions in the past when defendant had "yelled," "screamed," and sworn at her and had placed her "in fear of bodily harm;"[2] she added that she was "very scared" because that type of conduct on the part of defendant—which she alleged occurred "all the time"—had been "escalat[ing]."

It was plaintiff's testimony that, in August of 2012, her relationship with defendant worsened due to her having filed a motion to modify their child's visitation schedule (which motion was dismissed by the Family Court for lack of subject matter jurisdiction on August 9). The plaintiff then proceeded to testify with respect to three specific phone calls made by defendant to her after the dismissal of that motion. The plaintiff testified that, on the day her motion was dismissed, she received a phone call from defendant, who, in a "gruff, seething kind of tone of voice," said to her: "[A]re, you going to keep f*** with me now?" The plaintiff then testified that, sometime after that, defendant had called her to "gloat," stating: "Don't 'F' with me and my lawyers." She further testified that, on August 10, 2012, when she was en route to meet defendant so that she could pick up their son pursuant to a coparenting agreement, defendant called her on the phone and said: "So, you're going to stop talking, you know, s*** about me. Do you understand?" She stated that, because she became "really * * * scared" as a result of that phone call, she called the police in Franklin; she added that an officer then escorted her to the place where she would pick up the child. The plaintiff explained that, following that incident, she filed the complaint for protection from abuse. When asked whether there were any other incidents that placed her "in fear of [defendant] or in fear of bodily harm," she replied in the affirmative. She testified that, during the divorce proceedings, defendant threatened to

---

[2]    The plaintiff conceded on cross-examination that none of defendant's statements constituted explicit threats against her physical well-being; however, she testified that defendant would "lean[] in and yell[]" at her and would "use[] his physique to * * * be threatening" when speaking to her.

"throw [her] cats in the pound" and "trashed" her piano; she added that, in May of 2012, defendant "threw something at [her]."

## 2. The Testimony of Defendant

The defendant testified on his own behalf. He acknowledged that there had been arguments between plaintiff and him before and after their divorce was finalized and that he had resorted to vulgarity during those arguments. He admitted that, following the dismissal of plaintiff's motion to modify the visitation schedule, he had called plaintiff to "gloat[]" and that he had used the "F" word during that phone call. He also testified that, during the August 10 phone call testified to by plaintiff, he told her to "stop making up lies about [him]." It was his testimony that, after that call, plaintiff called the police and that an officer had been present the next time the parties exchanged their son. The defendant acknowledged that his swearing at plaintiff in the midst of a phone call constituted "harassment," but he asserted that she had been "harassing [him] as well."

## 3. The Decision of the Family Court Magistrate

After the testimony was heard, the magistrate rendered a decision from the bench. She found that "this case [was] a case that sound[ed] in * * * harassment and intimidation and * * * control" but that it was "not a case of physical violence or threats of physical violence." It was the magistrate's view that, "in order to protect the plaintiff from the intimidation and the harassment," the existing order for protection issued on August 10, 2012 should remain in effect as a civil order. In accordance with the magistrate's decision, a civil restraining order against defendant was entered on November 9, 2012. The defendant filed a timely appeal to the Chief Judge of the Family Court, in accordance with G.L. 1956 § 8-10-3.1(d).

**The Defendant's Appeal to the Chief Judge**

On April 18, 2013, a hearing was held before the Chief Judge on defendant's appeal. The defendant contended that, because the magistrate found that the present case sounded in "harassment and intimidation and * * * control" but was not "a case of physical violence or threats of physical violence," she exceeded her statutory authority under chapter 15 of title 15 when she issued the civil restraining order.

The Chief Judge determined that, based on her review of the testimony of both plaintiff and defendant at the hearing before the magistrate, "there [was] no question that [defendant had] intimidated and [had] bull[ied]" plaintiff and that the magistrate, by issuing a civil restraining order, "did what she was supposed to do."

**II**

**Standard of Review**

This Court reviews questions of statutory construction and interpretation in a de novo manner. State v. Diamante, 83 A.3d 546, 548 (R.I. 2014); see also McCulloch v. McCulloch, 69 A.3d 810, 819 (R.I. 2013); Downey v. Carcieri, 996 A.2d 1144, 1149 (R.I. 2010); Planned Environments Management Corp. v. Robert, 966 A.2d 117, 121 (R.I. 2009). It is a well-settled principle that, "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Diamante, 83 A.3d at 548 (internal quotation marks omitted); see also DeMarco v. Travelers Insurance Co., 26 A.3d 585, 616 (R.I. 2011); Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996). If a statute is ambiguous, however, we will "apply the rules of statutory construction and examine the statute in its entirety to determine the

intent and purpose of the Legislature." Tarzia v. State, 44 A.3d 1245, 1252 (R.I. 2012) (internal quotation marks omitted); see also Kingston Hill Academy v. Chariho Regional School District, 21 A.3d 264, 271 (R.I. 2011); Downey, 996 A.2d at 1150.

### III

### Analysis

On appeal, defendant contends that the magistrate committed an error when she issued a civil restraining order pursuant to § 15-15-3(a) because any remedy afforded to a plaintiff under chapter 15 of title 15 must be predicated upon a finding of "[d]omestic abuse" as set forth in § 15-15-1(2); defendant represents that the magistrate made "an explicit finding on the record that the case did not involve domestic abuse." The defendant further contends that, if this Court determines that the magistrate made "a positive finding of domestic abuse, such a finding is unfounded and unsupported" by plaintiff's complaint and the affidavit in support of same, as well as the testimony presented at the hearing before the magistrate. The defendant attempts to frame his argument as an appeal of the magistrate's order; however, what is properly before this Court is the affirmance by the Chief Judge of the Family Court of the magistrate's order issuing a civil restraining order.

In our judgment, defendant's conduct was clearly the type of conduct that the General Assembly has mandated can be the predicate for the issuance of a protective order. Section 15-15-3(a) expressly authorizes issuance of a protective order on behalf of a "person suffering from domestic abuse." The term "[d]omestic abuse" is defined, with a laudable degree of specificity, in § 15-15-1(2). Among the acts specified in a later subsection of the statute as constituting "domestic abuse" is "[s]talking." That subsection (viz., § 15-15-1(6)) reads in its entirety as follows:

> "'Stalking' means harassing another person or willfully, maliciously and repeatedly following another person with the intent to place that person in reasonable fear of bodily injury[.]"

It is significant that the just-quoted statutory definition is worded in the disjunctive. Accordingly, for present purposes, it suffices to focus on the first five words of that definition: "'Stalking' means harassing another person."

In turn, the term "harassing" is statutorily defined as follows:

> "'Harassing' means following a knowing and willful course of conduct directed at a specific person with the intent to seriously alarm, annoy, or bother the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, or be in fear of bodily injury[.]" Section 15-15-1(8).

In the present action, defendant's conduct fell within the purview of "domestic abuse" because he was "harassing" (and thus "stalking") plaintiff within the meaning of the statute. The plaintiff testified with respect to defendant's repeated use of vulgar language towards her and his threatening demeanor and tone; and she stated in both her complaint and at the hearing before the magistrate that defendant had placed her "in fear of physical harm." The defendant admitted to such conduct, and it is worth noting that he also acknowledged that his swearing at plaintiff in the midst of a phone call constituted "harassment." It is clear to us (1) that defendant was engaging in "a knowing and willful course of conduct" directed at plaintiff, with the intent to "seriously alarm, annoy, or bother" her and (2) that such conduct would cause a reasonable person to "be in fear of bodily injury." Section 15-15-1(8).

After a careful review of the record, we are unable to find where, as defendant contends, the magistrate made "an explicit finding on the record that the case did not involve domestic abuse;" the finding by the magistrate to which defendant appears to be referring to is her finding that the instant case was "not a case of physical violence or threats of physical violence." It is

apparent, however, from the clear and unambiguous language of the statute that actual physical harm or threats thereof are not required for a finding that, in a given case, "domestic abuse," as defined by § 15-15-1(2), is present. See National Refrigeration, Inc. v. Capital Properties, Inc., 88 A.3d 1150, 1156 (R.I. 2014). As previously indicated, in our view, the above-referenced testimony established that defendant had been "harassing" plaintiff within the plain meaning of the statute. See D'Ambra v. North Providence School Committee, 601 A.2d 1370, 1375 (R.I. 1992).

In his written submission to this Court, the defendant concedes that, if there is a finding of "domestic abuse" as defined by § 15-15-1(2), then § 15-15-3(a) expressly provides the hearing justice with the discretion to choose an appropriate remedy based on the facts or circumstances of a particular case in order to protect a claimant from that domestic abuse. Section 15-15-3(a) clearly and unambiguously provides for relief from abuse in a variety of forms, "including, but not limited to," five specified remedies—one of which is a protective order. See Diamante, 83 A.3d at 550. Furthermore, § 15-15-3(h)(2) clearly states that any proceedings under this chapter "shall not preclude any other available civil or criminal remedies." We read this language in conjunction with § 8-10-38, which confers on the Family Court the same power which is conferred on the Superior Court by the provisions of G.L. 1956 § 8-6-1. Section 8-6-1 provides that the Supreme and Superior Courts may "enter such judgments, decrees, and orders * * * as may be necessary or proper to carry into full effect all the powers and jurisdiction * * * conferred upon them * * *." Accordingly, the Chief Judge properly affirmed the magistrate's order because it was within the magistrate's authority to issue a civil restraining order in this case after determining that, based on the evidence before her, the civil restraining order was necessary to protect the plaintiff from the defendant's harassment.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the order of the Family Court. The record in this case may be returned to that tribunal.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Rosanna Cavanaugh v. Brian Cavanaugh.

**CASE NO:**    No. 2013-198-Appeal.
(P 12-1084-A)

**COURT:**    Supreme Court

**DATE OPINION FILED:**  June 16, 2014

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**    Providence County Family Court

**JUDGE FROM LOWER COURT**:

Chief Judge Haiganush R. Bedrosian

Magistrate Jeanne L. Shepard

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Robert M. Brady, Esq.

For Defendant:  Karen A. Oliveira, Esq.