May 30, 2017

**Supreme Court**

No. 2016-103-Appeal.
(PC 09-5447)

Plainfield Pike Development, LLC.      :

v.                 :

Victor Anthony Properties, Inc.      :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Plainfield Pike Development, LLC.　　　:

v.　　　　　　　　　:

Victor Anthony Properties, Inc.　　　:

Present: Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The defendant, Victor Anthony Properties, Inc. (Victor Properties or defendant), appeals from a final judgment in favor of the plaintiff, Plainfield Pike Development, LLC (Plainfield or plaintiff).  The plaintiff had filed a declaratory-judgment action seeking adjudication regarding its use of a roadway over the defendant's abutting property.  The matter was tried before the Superior Court, and the trial justice found that the plaintiff had an easement or right-of-way over this roadway and that its use of the right-of-way was not limited to a specific use.  On appeal, the defendant does not dispute the finding that the plaintiff has a right-of-way over its roadway; instead, the defendant asserts that the proposed use of said right-of-way by the plaintiff "is an unreasonable extension of the use intended by the parties when the easement was originally created in 1922."

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further

- 1 -

briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

The plaintiff owns property located at 1901 Plainfield Pike, Johnston, designated as Tax Assessor's Plat No. 29, lots No. 53 and 90.  The defendant owns abutting property located to the north and along the easterly side of plaintiff's lot No. 90, designated as Plat No. 29, lot No. 11.[1]  Ingress and egress to lot No. 11 are by way of a roughly 400-foot-long roadway from Plainfield Pike, which is at times referred to as "Elks Lane."  This roadway abuts the easterly boundary of lot No. 90 and is the subject of this dispute (herein, the right-of-way or easement).  After purchasing lots No. 53 and 90 and obtaining the necessary approvals, plaintiff began the construction of an automobile repair facility known as Protech Automotive Services (Protech).  At some time thereafter, when construction had already commenced, defendant erected a fence preventing access to the right-of-way.

On September 17, 2009, plaintiff filed a two-count declaratory-judgment action against defendant in Superior Court.  The plaintiff sought a declaration that it had the right to use the right-of-way on lot No. 11 (count 1) and a declaration of the extent it could use the right-of-way (count 2).  In its answer to the complaint, in addition to seeking a declaration that the right-of-way did not exist over its lot, defendant raised several defenses, including that the failure of plaintiff, and its predecessors in interest, to use or maintain the right-of-way constituted an abandonment of said right-of-way.

---

[1] See Appendix A.

- 2 -

# A

## Trial Testimony

On October 26, 2011, the matter proceeded to a jury-waived trial. At trial, Thomas D. Mercier, a title examiner who was qualified as an expert, was the first witness. Mercier was hired to compile a title abstract for lots No. 53 and 90, and for lot No. 11. Through Mercier, several deeds entered as exhibits, including an April 11, 1922, deed conveying lots No. 53 and 90 (then lot No. 12),[2] to Giuseppe Iannelli and Domenico Cardillo. This deed expressly conveyed the right-of-way, providing, in relevant part:

> "with the right to said grantees, their heirs, executors, administrators, and assigns to use the roadway with teams and otherwise, running through said other land of the said Lena Weeden and Esther Frances Weeden [(then owners of lot No. 11)], they paying one-half of the expense of maintaining said roadway * * *."

A July 31, 1922, deed conveying lot No. 11 also contained language indicating that such lot was the servient property to an easement granted to the owners of lot No. 12. Specifically, the deed provided that "[t]his conveyance is made subject to the right of Giuseppe Iannelli and Domenico Cardillo [(then owners of lot No. 12)], their heirs, executors, administrators and assigns, to use the roadway running through the premises described with teams or otherwise * * *." During cross-examination, Mercier acknowledged that some of the subsequent deeds in the chain of title to the pertinent lots did not reference the right-of-way.

Peter Nolan, an experienced title attorney who was also qualified as an expert, opined that the right-of-way existed over lot No. 11 for the benefit of lot No. 90. He explained that he formed his opinion after he reviewed the abstract prepared by Mercier, as well as after visiting

---

[2] Lot No. 12 was later subdivided into four lots, including plaintiff's lots No. 53 and 90. See infra n. 6.

- 3 -

the site. He testified that, in his opinion, the easement ran with the land for the benefit of plaintiff's lot No. 90, the right-of-way was not limited to a particular use or scope, and it "can be used for most [sic] anything." He further opined that the right-of-way had not been abandoned due to its non-inclusion in the chain of title and that it was "still transferred to subsequent grantees even though not specifically recited." He also testified that there was no indication that the right-of-way was limited to farm use.

Eric Colburn, a professional land surveyor with roughly twenty-eight years of experience, was plaintiff's final witness. He was retained to provide his expert opinion regarding the location and scope of the right-of-way. He opined "that the right-of-way begins * * * at Plainfield Pike and runs northerly along the narrow strip that is Lot 11, and then abuts around the backside of what used to be Lot 12 and is now Lot 90, and continues outside of the area that [he] investigated." He formed his opinion after reviewing aerial maps dating back to 1939, several surveys, and the pertinent deeds. Colburn opined that the right-of-way appeared to be 22.75 feet wide—the distance between the lot lines on lot No. 11. He also took note of the reference to the Rhode Island Ice Company in the 1939 title to lot No. 11. He explained that this was "pertinent to the fact that there was an ice company operational on * * * Lot 11, and * * * it indicate[d] a commercial use of that land * * *." Following Colburn's testimony, plaintiff rested its case.

William Wilbur, the project developer for the Protech facility, was defendant's first witness. He explained the process that he undertook on behalf of plaintiff to obtain the proper permits to construct the Protech facility, including petitioning the Zoning Board of the Town of Johnston (the board) for a special-use permit. He described his duties and responsibilities as the developer of Protech, which included assembling a team to build the structure; he also described the tasks each team member was responsible for and ultimately fulfilled as part of the project.

He attested that, to his knowledge, no one had asked defendant for permission or approval to use the access (over the right-of-way) depicted on the site plan. He recalled that, during the construction of the Protech facility, he contacted his attorney to complain that the right-of-way was being blocked and that he needed access to it.

Jeffrey Campopiano, a professional civil engineer, was the next witness. After being qualified as an expert, he testified that he had previously drafted a preliminary and final plan for the development of lot No. 12 and that, at the request of defense counsel, he had performed research to determine the length and width of the right-of-way over lot No. 11. He described the process he used to make his determination, which included accessing historic photographs in the Rhode Island Geographical Information System database, as well as reviewing the site plan and relevant deeds. He concluded that, in his opinion, the right-of-way was "less than 20 feet, probably about 10 feet wide." He explained that, historically, farm easements were used to gain access to water, and he recalled this specific right-of-way being used to access the pond for ice.

Ralph Cuculo, a title attorney who prepared the deed transferring lot No. 11 to Victor Properties, opined "that the easement existed or maybe still exist[s] for the benefit of Lot 12." He explained that his opinion is based on the language of the April 11, 1922 deed. He testified that he had his "doubts" about whether the easement ran with the land.

Peter Vassilopoulos, who owns and operates a local marina, testified that he gave the president and sole shareholder of Victor Properties, Nicola Ricci, a mortgage to lot No. 11 in March 2009. He testified that he believed Ricci's prior mortgage on lot No. 11 "had come due and they were forcing foreclosure." He also attested that, around that same time, he received an

offer from Chris Bodine (a partner at BTN Development, LLC[3]) to purchase the mortgage. He further stated that the current status of the mortgage at the time of trial was overdue or "due in full."

Ricci testified that he could not sell lot No. 11 because he was in litigation and that, if the Court were to find that there was an easement over lot No. 11, this finding would affect his property "[i]mmensely on a daily basis." He explained that he stores dump trucks, payloaders, excavators, and heavy equipment on his lot. He testified that the right-of-way is not wide enough for there to be a two-vehicle lane. He claimed that "[i]t would be very difficult for [them] to go in and out with [their] big trucks and big machinery, and having other cars in and out of it." On cross-examination, Ricci acknowledged that he was aware of the board hearing relating to plaintiff's proposed construction of lot No. 12 and that it was his own decision not to attend the hearings after he concluded that the proposed project did not pertain to him. He also testified that he had signed a purchase and sale agreement to personally purchase lots No. 53 and 90, and that he was seeking to litigate that matter. Thereafter, five witnesses were presented under subpoena, and several exhibits were authenticated.[4]

Finally, Joseph Iannelli was the last witness to be presented. He testified that his father was Giuseppe Iannelli (a previous owner of lot No. 12) and that his father farmed the land on Plainfield Pike in Johnston for forty years until he gave the land to his sons. He testified that,

---

[3] BTN Development, LLC, (BTN Development) owned lots No. 53 and 90 in 2008, and was the entity that sold these lots to plaintiff in 2009.

[4] These witnesses included: Holli Stott, employed by the town of Johnston, who authenticated the records of the zoning and planning boards; Mark Welch, employed by the Secretary of State, who presented certified copies of business records that were later authenticated with affidavits; Edward Pimentel, employed by plaintiff to assist in the zoning applications; Anthony Muscatelli, employed by the International Mapping and Survey Corporation, who authenticated the site plan he had prepared; and Robert Clinton, a traffic and transportation engineer retained by plaintiff to perform a traffic study.

while farming the land, they took Elks Road, which was an old dirt right-of-way, from the main road down to the pond so they could water their farm. He testified that, at that time, the road "wasn't too wide[,] * * * [a] small truck could go down through there [or] a horse and team," but that it could not be used as a two-way road. He attested that they traveled over the road with a horse and wagon or tractor used to cultivate the farm.

The trial concluded, and both parties filed written submissions to the trial justice.

**B**

**Superior Court Decision**

Over four years later, the trial justice issued a written decision in favor of plaintiff, and her findings of fact may be summarized as follows. The trial justice began her decision by describing the property at issue and following the chain of title to lots No. 11 and 12.

As it relates to lot No. 11, "[t]he first relevant deed dates back to November 24, 1916[,]" and a subsequent deed was recorded on July 31, 1922, and includes language that lot No. 11 was subject to a right-of-way granted to lot No. 12. Following the 1922 deed, a deed was recorded in 1939 that states: "[s]aid tract or parcel of land [was] subject, however, to the right of [Giuseppe] Iannelli and Domenico Cardillo [(then owners of lot No. 12)], their heirs, executors, administrators and assigns, to use the roadway running through the premises above described with teams or otherwise, they paying one half of the expense of maintaining said roadway." The trial justice found that the subsequent deeds in 1955, 1962, and 1963 all had similar or identical language relating to the right-of-way.

In 1970, an agreement between Cranston Print Works Company and May Volatile (then-owner of lot No. 11) described that an easement over lot No. 11:

> "shall be twenty-three feet (23) in width and shall extend in a
> northerly direction across the land of MAY VOLATILE from the

northerly line of Plainfield Turnpike, also known as Plainfield Pike, to Simmons Lower Reservoir and running adjacent to the easterly line of said land of MAY VOLATILE. Said easement, wherever it is in a common right of way, will be reserved to the use of CRANSTON PRINT WORKS COMPANY, MAY VOLATILE and owners of property abutting such easement, and their respective heirs, executors, administrators and assigns." (Herein, "1970 Agreement.")

Subsequent sales were made, and deeds were recorded in 1970 and 1972—neither of which contained a reference to the right-of-way. In 1981, 1987, and 1988, deeds were recorded indicating that the lot was subject to a right-of-way. The next deed in evidence was recorded in 2003 and referenced the sale of lot No. 11 to Victor Properties. Such deed provides that "said tract or parcel of land is subject also to the right to use the roadway running through the demised premises, with teams or otherwise, as set forth in [the] deed * * * dated July 31, 1922 * * *."

With respect to lot No. 12, which, as previously noted, was later subdivided to include plaintiff's present lots No. 53 and 90, the trial justice found that an April 11, 1922 deed "expressly conveyed the right-of-way over Lot 11" and that lot No. 12 was "used for a farming business." Three other deeds were recorded between 1922 and 1989, two of which did not reference the right-of-way whereas one did.[5] In 2008, lots No. 53 and 90 were conveyed to BTN Development and recorded with no reference to the right-of-way. Finally, in 2009, plaintiff purchased lots No. 53 and 90 from BTN Development, and such deed also did not contain language pertaining to the right-of-way.

After plaintiff purchased lots No. 53 and 90, it applied for a special-use permit from the board for the construction of the Protech facility. After holding a public hearing on the

---

[5] In 1956, a portion of lot No. 12 was deeded with no reference to the right-of-way (today's lot No. 53). The remaining portion of lot No. 12 was deeded in 1963 and contained "language evidencing and conveying the right-of-way." Then, in 1989, two deeds were recorded—one deed granting a portion of lot No. 12 (now lot No. 90); the other deed dealing with the remaining portion of lot No. 12.

application, the board "unanimously approved [p]laintiff's [s]pecial [u]se [p]ermit." Although one of the site plans during the application process contained a notation that "approval from owner of * * * Lot 11, will be required for this access" over the right-of-way, the site plan ultimately submitted and approved did not contain this language.

In her written decision, the trial justice assessed plaintiff's witnesses; she found them to be "distinguished in their fields of work" and their testimony "compelling." Specifically, the trial justice found that Nolan "credibly and convincingly opined that the easement over Lot 11 exists and that it runs with the land, to wit, the owner of Lot 12 and its successors in title, including the present owner of Lot 90." The trial justice further found the testimony of surveyors Colburn and Muscatelli credible and persuasive, including Colburn's calculation that the easement was 22.75 feet wide and Muscatelli's opinion as to the location of the easement.

On the other hand, the trial justice found defendant's "evidence deficient in many regards," and noted that the testimony of Ricci was "less than persuasive and continually lacking [in] focus." The trial justice further noted that defendant "presented no credible evidence that the * * * [b]oard, in granting the [s]pecial [u]se [p]ermit, had relied upon the particular site plan which stated that [p]laintiff's use of Elks Lane as ingress/egress 'required approval of owner of Lot 11,' or that Ricci in any way relied upon any similar statements in the approval process * * *."

The trial justice concluded that an easement existed "over Lot 11 for the benefit of * * * Lot 12, including [p]laintiff as the present owner of Lots 53 and 90," and that the easement was "22.75 feet in width and extend[ed] in a northerly direction over Lot 11 from the northerly line of Plainfield Turnpike, also known as Plainfield Pike, to the Simmons Lower Reservoir, running adjacent to the boundary between Lot 11 and Lot 10 (to the east of Lot 11)." She found that

"[t]he clear and convincing evidence of record establishe[d] that the easement is appurtenant; it is not specific to any holder, and it runs with the land." She additionally found that, "[a]s there was no evidence presented that there was an unequivocal intent to abandon the easement, * * * the easement over Lot 11 ha[d] not been abandoned."

Relating to the scope of the easement, the trial justice found that "the easement exists over the 'roadway' that is continually and consistently referenced in the deeds, and which roadway was at one time named as 'Elks Lane,'" and that it was not limited to a specific use, as the original 1922 deed of conveyance stated it was to be used "with teams and <u>otherwise</u>." The trial justice specifically noted that there was no restriction on the use of the easement described in any of the recorded instruments introduced into evidence. Final judgment entered for plaintiff, and defendant filed a timely notice of appeal to this Court.

### III

### Analysis

### A

### Scope of the Right-of-Way

As noted, on appeal defendant does not challenge the existence of the right-of-way over lot No. 11 for the benefit of plaintiff's property. Instead, defendant argues that the proposed use of the right-of-way by plaintiff is an "unreasonable extension of the use intended by the parties when the [right-of-way] was originally created in 1922" and that the trial justice "drew [an] erroneous conclusion that using the easement as a means of ingress and egress to this automotive repair business was a reasonable application of the easement[']s intended purpose." The defendant maintains that some of the evidence cited by the trial justice in reaching her decision was clearly erroneous. Specifically, defendant challenges the conclusion that the "Rhode Island Ice Land Co. and the Elks Lodge Co., benefited from the existence of the easement when in fact

- 10 -

these businesses owned Lot 11 on which the easement was located." The defendant also challenges what it characterizes as the trial justice's reliance on the 1970 Agreement with Cranston Print Works Company, when, in actuality, said agreement concerned a different right-of-way than the one at issue in this case.

## 1. Standard of Review

"A Superior Court decision granting or denying declaratory relief is reviewed with great deference by this Court." Town Houses at Bonnet Shores Condominium Association v. Langlois, 45 A.3d 577, 581 (R.I. 2012) (quoting Downey v. Carcieri, 996 A.2d 1144, 1149 (R.I. 2010)). "When deciding an action for declaratory judgment, a Superior Court justice makes all findings of fact without a jury." Id. (quoting Downey, 996 A.2d at 1149). "Such factual findings are afforded great weight by this Court, 'and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.'" Id. (quoting Downey, 996 A.2d at 1149). "A trial justice's findings on questions of law, however, are reviewed de novo." Id. (quoting Downey, 996 A.2d at 1149).

## 2. Discussion

In Rhode Island, "to create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license." Kinder v. Westcott, 107 A.3d 321, 325 (R.I. 2015) (quoting Pelletier v. Laureanno, 46 A.3d 28, 36 (R.I. 2012)). This Court has held that "where the easement is created by grant and is not limited in its extent or scope by the terms of the grant, it is available for the reasonable uses to which the dominant estate may be denoted." Carpenter v. Hanslin, 900 A.2d 1136, 1148 (R.I. 2006).

- 11 -

After a careful review of the evidence presented at trial, including the relevant deeds and testimony, we are of the opinion that the trial justice was not clearly wrong when she concluded that there is no restriction on the use of the right-of-way. As the trial justice noted, the April 11, 1922, deed clearly indicated that the right-of-way may be used "with teams and <u>otherwise</u>," and several deeds in the chain of title to both lots contained identical or similar language. In the face of the numerous deeds that entered as trial exhibits, defendant is unable to point to a single deed containing limiting language. It is well-established that this lack of limiting language regarding its scope in the instrument creating the easement means that the right-of-way "is available for the reasonable uses to which the dominant estate may be denoted." <u>See</u> <u>Carpenter</u>, 900 A.2d at 1148. The question of reasonableness is a question of fact to which we prescribe great deference. <u>See</u> <u>Grady v. Narragansett Electric Co.</u>, 962 A.2d 34, 46 (R.I. 2009) ("Determining whether a use within an easement is reasonable or unreasonable is a question of fact to be determined by the trier of fact."). Although defendant presented witnesses to testify regarding the historical use of the roadway as a means to access the pond for water, the trial justice did not overlook or misconceive material evidence when concluding that the easement was not limited to a specific use "such as water collection or ice hauling."

Furthermore, defendant's argument that the trial justice improperly considered Rhode Island Ice Land Company and the Elks Lodge's nonfarming use of the right-of-way when these entities actually owned servient lot No. 11, is unavailing. After perusing the trial justice's decision, it is clear to this Court that she made no such consideration. Instead, in the first paragraph under the subsection "Location and Scope of Deeded Right-of-Way Over Lot 11," the trial justice summarized plaintiff's position:

> "[The] [p]laintiff next seeks a declaration of the extent of its
> permitted use of the easement over Lot 11. [The] [p]laintiff argues

that the deeded right-of-way was not limited to a specific scope because the phrase 'with teams or otherwise' demonstrates that the easement could be used for any purpose. Further, [p]laintiff presented evidence that the road was used by the Rhode Island Ice Land Company and the Elk's [sic] Lodge for purposes other than farming, as further support that the easement must have been granted for a wide variety of uses. Finally, [p]laintiff asserts that [d]efendant did not present any credible testimony that the easement will be overburdened by [p]laintiff's proposed use because Ricci's testimony on this point was self-serving." (Emphasis added.)

The trial justice continued, in the next paragraph, by summarizing defendant's arguments; only after articulating the proper legal standard to determine the scope of the right-of-way, did the trial justice provide an analysis. Notably, nowhere in the trial justice's analysis does she discuss Rhode Island Ice Land Company and the Elks Lodge's use of the roadway. Therefore, defendant's argument that she erred in this regard is unpersuasive as this Court is not convinced that the trial justice considered this use in reaching her ultimate decision. Instead, it is evident from the written decision that the trial justice relied on the fact that no limitation was recorded in any instrument.[6]

Moreover, defendant's argument that the trial justice erred in relying on the 1970 Agreement describing a different easement granted to Cranston Print Works Company is also without merit. In her analysis, the trial justice noted that the language of the 1970 Agreement between May Volatile and Cranston Print Works Company was "clear and unambiguous" and

---

[6] The trial justice's parenthetical comment following her finding that no restrictions were recorded suggests that she may not have even considered extrinsic evidence regarding the extent of plaintiff's permitted use of the right-of-way. The trial justice quoted Richards v. Halder, 853 A.2d 1206 (R.I. 2004), "It is true that where in a written instrument an easement of way is granted in express terms, the nature and extent of the easement thus established is to be determined primarily from the language used in the writing, and if the terms thereof are free from uncertainty and ambiguity, oral testimony is not admissible to explain the nature or extent of the easement granted." Id. at 1210 (quoting Waterman v. Waterman, 93 R.I. 344, 349, 175 A.2d 291, 294 (1961)).

- 13 -

established that the right-of-way extends to the Simmons Lower Reservoir. At trial, Nolan's undisputed expert opinion was that the easement granted to Cranston Print Works Company was a different easement than the right-of-way in this case. However, defendant does not request reversal of the trial justice's determination regarding the <u>location</u> of the right-of-way, but instead focuses its appeal on the finding regarding its use. It is our opinion that the trial justice did not consider the 1970 Agreement in deciding whether the proposed use of the right-of-way was reasonable and we, therefore, reject defendant's claim of error.[7]

The trial justice's finding that the right-of-way is not limited to a specific use was supported by the evidence adduced at trial, mainly the language of the pertinent deeds. Accordingly, we will not disturb this finding.

**B**

**Judicial Estoppel**

Next, defendant argues that plaintiff strategically did not mention the use of the right-of-way when it was before the board seeking relief to construct the Protech facility. The defendant's position is that plaintiff "used the Superior Court in a manner that clearly was designed to bypass the * * * [b]oard" and should have, therefore, been judicially estopped from bringing these claims in Superior Court. The defendant maintains that the trial justice was clearly wrong when she rejected his contention that the site plan relied upon by the board contained language that plaintiff needed to obtain permission from the owner of lot No. 11 for a specific access depicted over the right-of-way. The defendant claims that the trial justice erred in

---

[7] To the extent the trial justice considered the terms of the 1970 Agreement to determine the location of the right-of-way and to conclude that the right-of-way "extends along the eastern boundary of Lot 11 all the way to the Simmons Lower Reservoir," such determination was not appealed by either party and is not before us. Accordingly, it will not be considered by this Court.

concluding that there was no evidence to this effect because "[t]he only site plan in the * * * [b]oard exhibits that depicts the exit/entrance contains the aforesaid language and does not depict an easement."

### 1. Standard of Review

"A trial justice has the discretion to invoke judicial estoppel 'when he or she finds that a party's inconsistent positions would create an unfair advantage.'" Iadevaia v. Town of Scituate Zoning Board of Review, 80 A.3d 864, 870 (R.I. 2013) (quoting State v. Lead Industries Association, Inc., 69 A.3d 1304, 1310 (R.I. 2013) (Lead Industries)). Accordingly, "'our review is deferential and considers whether judicial acceptance of that party's subsequent position would be perceived as misleading as to either the first or second court,' and this Court will not disturb a trial justice's invocation of judicial estoppel absent an abuse of discretion." Id. (quoting Lead Industries, 69 A.3d at 1310-11).

### 2. Discussion

"Unlike equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the relationship between the litigant and the judicial system as a whole." Iadevaia, 80 A.3d at 870-71 (quoting Lead Industries, 69 A.3d at 1310). "Because the rule is intended to prevent improper use of judicial machinery, * * * judicial estoppel is an equitable doctrine invoked by a court at its discretion." Id. at 871 (quoting Gaumond v. Trinity Repertory Co., 909 A.2d 512, 519 (R.I. 2006)). "One of the primary factors courts typically look to in determining whether to invoke the doctrine in a particular case is whether the party seeking to assert an inconsistent position would derive an unfair advantage * * * if not estopped." Id. (quoting Lead Industries, 69 A.3d at 1310).

Based on the facts of this case and the discretion afforded a trial justice when deciding a claim of judicial estoppel, we are of the opinion that the trial justice committed no error. The defendant wholly failed to present any evidence of an alleged inconsistency in plaintiff's posture before the board and before the Superior Court, or how either of these fora were somehow misled by the plaintiff. See Iadevaia, 80 A.3d at 871. Moreover, the Superior Court decision does not in any way circumvent the board's authority and jurisdiction over land-use and special-use permits. The Superior Court adjudicated the existence and scope of a right-of-way over lot No. 11 for the benefit of plaintiff's property, something within its jurisdiction to do. See G.L. 1956 § 9-30-1; Carpenter, 900 A.2d at 1143.

Accordingly, it is our opinion that the trial justice did not abuse her discretion in rejecting the defendant's judicial estoppel claim.

**IV**

**Conclusion**

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned thereto.

Justice Flaherty did not participate.

## Appendix A



# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Plainfield Pike Development, LLC v. Victor Anthony Properties, Inc. |
| **Case Number** | No. 2016-103-Appeal. (PC 09-5447) |
| **Date Opinion Filed** | May 30, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Kristin E. Rodgers |
| **Attorney(s) on Appeal** | For Plaintiff: James Moretti, Esq. |
| | For Defendant: John R. Mahoney, Esq. |