June 22, 2023

**Supreme Court**

No. 2021-56-Appeal.
(PC 17-5227)

(Dissent begins on Page 21)

Robert M. Estrella, as the Executor of  :
the Estate of Armando Damiani and the
Executor of the Estate of Lillian Estrella

v.                                 :

Janney Montgomery Scott LLC et al.  :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Robert M. Estrella, as the Executor of   :
the Estate of Armando Damiani and the
Executor of the Estate of Lillian Estrella

v.                         :

Janney Montgomery Scott LLC et al.   :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**   The defendant, Steven Damiani,[1]

appeals from a Superior Court judgment in favor of the plaintiff, Robert Estrella, as

Executor of the Estate of Armando Damiani and the Executor of the Estate of Lillian

Estrella.[2]   The defendant raises two issues on appeal.   First, the defendant submits

that the trial justice erred by permitting a witness to testify despite knowing in

---

[1] Many individuals involved in this dispute share the last names Estrella and Damiani: Robert Estrella, Robert M. Estrella, Lillian Estrella, Armando "Mandy" Damiani, Michael Damiani, and Steven Damiani.  We refer to these individuals, other than plaintiff and defendant, by first names for the purpose of clarity.  No disrespect is intended.

[2] Robert Estrella litigated the case until his death in April 2022.  This Court granted a motion to substitute filed by his son and successor executor, Robert M. Estrella, on June 22, 2022.  Throughout this opinion, we refer to the two executors collectively as plaintiff.  No disrespect is intended.

- 1 -

advance that she would invoke her Fifth Amendment privilege against self-incrimination. This taint, the defendant asserts, infected not only the jury verdict but also the trial justice's grant of declaratory relief. Second, the defendant contends that a party who is found to be a coconspirator in a civil action is an agent of his coconspirator and, thus, a single tort-feasor under G.L. 1956 § 10-6-2. For the reasons set forth herein, we affirm in part and vacate in part the amended judgment of the Superior Court.

## I

### Facts and Travel

Before 92-year-old Armando Damiani (Mandy)[3] passed away on March 4, 2016, he held an investment account worth over $1.5 million. Prior to January 2016, Mandy's investment account was held at Wells Fargo Advisors (Wells Fargo), with Mandy's sister, Lillian Estrella, listed as the transfer-on-death (TOD) beneficiary. Upon Mandy's death, his nephew, Steven (defendant), came into possession of the investment account. The plaintiff, Mandy's brother-in-law and Lillian's husband, in his capacity as the executor of both of their estates, filed a complaint in Providence County Superior Court alleging, *inter alia*, that defendant Janney Montgomery Scott LLC (Janney), and Richard Ranone—Mandy's longtime financial advisor—had

---

[3] Throughout the proceedings and his life, Armando Damiani was commonly referred to as "Mandy."

conspired to commit an unlawful conversion of the funds in the investment account.[4]

The plaintiff also made a claim for declaratory judgment. A five-day jury trial ultimately ensued.[5] Except where noted otherwise, the facts below are derived from undisputed trial testimony.

In 2016, Ranone, who had recently left his position at Wells Fargo to work for Janney, was in the process of transferring Wells Fargo accounts of certain clients to Janney. Ranone's bonus from Janney depended upon the amount of assets under his management. In addition to Mandy's $1.5 million portfolio, Ranone—also defendant's longtime financial advisor—eventually transferred defendant's Wells Fargo account to Janney.

In January 2016, Ranone went to Mandy's home to help him fill out the necessary paperwork to transfer his investment account to Ranone's new firm. Among the forms Mandy completed was a client agreement and account transfer form authorizing Wells Fargo to transfer Mandy's account to Janney. Notably, however, Mandy did not designate a TOD beneficiary for the new Janney account. Ranone testified that Mandy was unsure whether he still wanted to list Lillian as the TOD beneficiary because she had been ill. According to Ranone, Mandy asked if

_____

[4] The plaintiff also brought claims against Michael Damiani and Navigant Credit Union. Before trial, these claims were voluntarily dismissed with prejudice.
[5] The claims on behalf of Lillian's estate were not successful and are not before us on appeal.

he could just sign the TOD form and later call Ranone with further instructions as to his designation of a beneficiary.

Ranone further testified that he directed Mandy to sign the form, leaving the TOD portion blank, notwithstanding the following language on the form: "I[] verify that the statements and information contained in this TOD form are true and complete to the best of my[] knowledge and belief." Additionally, the TOD form required a notary to designate whether the signor was personally known to the notary or if identification had been produced. A notary was not present when Mandy signed the form.

At trial, Ranone testified that he spoke with Mandy on February 1, 2016, and that Mandy told Ranone he wanted to have defendant listed as the TOD beneficiary; Ranone further testified that he added defendant's name onto the blank TOD form. After Ranone listed defendant as the TOD beneficiary, Ranone had the form backdated and notarized by Kristen Verdeaux, a private-client assistant at Janney. When asked whether the notarization was improper, Ranone admitted at trial that he was "not comfortable with the way th[at the TOD] form was done" and that "[h]aving [Mandy] sign a blank form was a mistake."

On February 3, 2016, Mandy entered the hospital for an elective surgery. During his hospitalization, Mandy developed an infection and sepsis and required

an additional surgery. After the second surgery, Mandy was placed in the intensive-care unit.

Ranone testified that he had become uncomfortable about Mandy signing a blank TOD form and, therefore, he had a new version of the form prepared. On February 13, 2016, Ranone took the second TOD form to Rhode Island Hospital, where Mandy was in the intensive-care unit. Ranone claimed that he wanted Steven Pitassi, his supervisor, and the office notary, Verdeaux, to accompany him to the hospital to have Mandy fill out the form, but, no notary or anyone else was present for the signing of the second TOD form. As she had before, Verdeaux notarized the second TOD form back at the office.

Ranone again admitted at trial that it was a mistake to have Verdeaux backdate and notarize the second TOD form without being present at the signing. Still, Ranone claimed that Mandy understood what he was doing when he signed the second form.

At trial, expert witnesses provided differing testimony regarding Mandy's treatment and cognitive ability. Doctor Srdjan M. Nedeljkovic was qualified as an expert in pain management and anesthesiology. He opined to a reasonable degree of medical certainty that, on February 13, 2016, Mandy's "cognitive status was at a very low level [and] that he would not be able to execute any kind of complicated decision[]making during this time." Doctor Edward Feldmann was qualified as an

expert in neurology. Doctor Feldmann testified that, in his opinion, to a reasonable degree of medical certainty, "except for being slightly drowsy, [Mandy] had no neurological impairment whatsoever, and he could have easily conducted his own affairs." Still, Dr. Feldmann admitted that Mandy could have been disoriented from pain, medications, infection, and being in the ICU. The jury was also able to compare Mandy's signature on the two TOD forms.

At trial, Verdeaux agreed that it was her notary stamp and signature on the first and second TOD forms, but she invoked the Fifth Amendment when she was questioned by counsel as to whether she was in the presence of Mandy when he signed the TOD forms. When defense counsel asked her if she knew defendant, Verdeaux also invoked the privilege.

At trial, defendant and Ranone both testified that their relationship was strictly business. During defendant and Ranone's fifteen-year relationship, they allegedly only met in person once every three years and spoke on the phone once or twice each year. The plaintiff, however, presented evidence that, from February 1, 2016, until Mandy's passing, Ranone and defendant spoke on the phone at least eight times. For example, they spoke on the day Mandy allegedly instructed Ranone to write defendant's name on the first TOD form; there were four calls shortly before and after Mandy's second surgery, before Ranone visited the ICU; a seventeen-minute call a week later when Mandy's health started to seriously decline; and finally,

shortly after Mandy died on March 4, 2016, defendant called Ranone to let him know that Mandy had passed away.

Despite the increased call volume, Ranone asserted, "I never told [defendant] that he was the beneficiary prior to Armando dying." Additionally, when counsel asked defendant when he learned that he was the TOD beneficiary of over $1.5 million, he gave conflicting deposition and trial testimony. At trial he claimed he did not know he was the TOD beneficiary until March 9, 2016, but his deposition testimony stated that Mandy had told defendant he was the beneficiary in the hospital before he died.

Based on the foregoing evidence, the jury found that Mandy intended to open his account with Janney, but that he did not intend to designate defendant as the TOD beneficiary. The jury also found that plaintiff had "proven by a fair preponderance of the evidence [his] claim of conversion as to the Estate of Armando Damiani and regarding" defendant. The jury set damages at $1,566,909.46. The jury also found that plaintiff had proven the conversion claims against Ranone. Finally, the jury found that plaintiff had proven that there was a conspiracy between defendant and Ranone.

After the trial, plaintiff made a post-trial motion for declaratory judgment, which the trial justice granted. The court declared as follows: "(1) Mandy properly opened a Janney account; (2) both TODs are invalid and unenforceable; and (3)

because the Disputed Funds became a part of Mandy's Janney account—and in the absence of a named beneficiary—the Disputed Funds are an asset of Mandy's estate."

The plaintiff and defendants Janney and Ranone then settled. According to defendant, the release states, in relevant part, "This Agreement is not intended to release * * * [defendant], who was found jointly and severally liable to Claimant in the Action."

The defendant filed a motion to dismiss on June 23, 2020, asserting that, if he is a civil coconspirator, he is the agent of Ranone and, therefore, under § 10-6-2 the two are considered a single tortfeasor. Thus, defendant argued, he should also be released.

The trial justice issued a six-page decision denying defendant's motion to dismiss. The trial justice found that defendant's motion to dismiss was "more akin to a motion to vacate judgment based on newly discovered evidence"; thus, the trial justice applied "the standard of a motion for relief from judgment based on newly discovered evidence under Rule 60(b)(2) [of the Superior Court Rules of Civil Procedure]."

An order and separate amended judgment entered on September 30, 2020, denying defendant's motion and disposing of other motions that are not on appeal. The defendant filed a timely notice of appeal on October 19, 2020.

## II

## Analysis

On appeal, defendant asks this Court to reverse the Superior Court judgment and remand the case with instructions to enter judgment for defendant on the declaratory-judgment count and to order a new trial on the remaining counts. The defendant argues that, by allowing Verdeaux to testify despite knowing she would claim her Fifth Amendment privilege, he was unduly prejudiced by Verdeaux painting him with an air of criminality, and thus her testimony should have been precluded under Rule 403 of the Rhode Island Rules of Evidence. Further, he submits that this error undermined the trial justice's declaratory-judgment decision as well as the jury verdict. The defendant also contends that he and Ranone are a single tortfeasor within the meaning of § 10-6-2 and that, therefore, the release entered into between plaintiff and Janney and Ranone should also operate to dismiss defendant.

### Evidentiary Claims

We begin by addressing defendant's claims of evidentiary error. "[T]he admissibility of evidence is within the sound discretion of the trial justice." *Cappuccilli v. Carcieri*, 174 A.3d 722, 729 (R.I. 2017) (deletion omitted) (quoting *Martin v. Lawrence*, 79 A.3d 1275, 1281 (R.I. 2013)). "This Court will not interfere with the trial justice's decision unless a clear abuse of that

discretion is apparent." *Id.* (brackets omitted) (quoting *Berman v. Sitrin*, 101 A.3d 1251, 1259 (R.I. 2014)). Before reaching the merits of defendant's argument, however, we must first determine if the argument was properly preserved for review.

At trial, Verdeaux's whole testimony was admitted over a single objection by defense counsel:

> "[Defendant's counsel]: Your Honor, I'd like to state my objection on the record under Rule 403.
>
> "* * *
>
> "[Defendant's counsel]: * * * On behalf of [defendant] and pursuant to Rule 403, I'd ask this witness be excluded, her testimony be excluded as being unduly prejudicial to [defendant]. All of her testimony, what she is going to testify, relates to actions and interim procedures associated with Janney Montgomery Scott and is not something [defendant] was remotely involved in. Based on the foregoing, and based on what her testimony is expected to be, I think it would be unduly prejudicial, and that the jury could receive an improper inference regarding his conduct.
>
> "THE COURT: Thank you. Does plaintiff wish to be heard?
>
> "[Plaintiff's counsel]: Well, we think the witness should be heard. It's relevant. And that's it.
>
> "THE COURT: Thank you very much.
>
> "The [c]ourt finds based on the discretion it has at this point of the testimony that it is relevant under Rule 401, so the objection is overruled. Rule 403, which is whether or not the prejudice outweighs the probative value, the [c]ourt, based on the testimony it has heard thus far and

- 10 -

the proposed testimony, finds that the prejudicial value does not outweigh the probative effect, and that the [c]ourt, if necessary, either within the instructions or later in the trial can give a cautionary instruction to the jury, if it's appropriate and proposed by defense counsel."

The plaintiff contends that defendant's brief objection was insufficient to preserve the issue for appellate review. He argues that defendant's objection was not specific in that he did not mention Verdeaux's assertion of her Fifth Amendment privilege as the basis of his objection, nor had he moved *in limine* to exclude her testimony, nor did he raise the issue at any time in the "approximately [eighteen] months of extensive post-trial motion practice." Finally, plaintiff argues that permitting Verdeaux to testify did not amount to reversible error because counsel never requested a cautionary instruction as the trial justice had offered. In the context of this case, we disagree.

At the time Verdeaux was called to testify at trial, it was well known to the parties and the trial justice that she had invoked her Fifth Amendment privilege at her deposition. Indeed, the trial justice in his pretrial decision on defendant's petition to dissolve a temporary restraining order commented on the backdating of the TOD form, stating, "[t]he notary, when questioned about this refused to answer any questions and invoked her Fifth Amendment privilege."

Also, it was clear from the evidence educed by this point in the trial that Ranone was the primary actor in the alleged conspiracy to convert Mandy's account.

- 11 -

It was Ranone who had met with Mandy at this home and at the hospital, who had instructed Mandy to sign the TOD form with a blank designation of beneficiary, and who had enlisted Verdeaux to backdate and sign the notary clause. The evidence of defendant's involvement in the scheme was far more tenuous, consisting almost exclusively of eight telephone calls between defendant and Ranone in the month preceding Mandy's death and the jury's assessment of the credibility of the various witnesses, particularly defendant himself. Under the circumstances, we are satisfied that defendant's objection, specifically referencing Rule 403 and requesting that Verdeaux's "testimony be excluded as being unduly prejudicial to Steven Damiani" preserved this issue for appellate review.

We now turn to the substance of defendant's appeal. The defendant frames his assignment of error as follows:

> "When it was known that a witness would plead the Fifth Amendment before the jury and the facts about which the witness could testify were already established and uncontested, [defendant] suffered prejudice when the trial justice erred in allowing the witness to testify and invoke the privilege in the presence of the jury."

Based upon our review of the record, we are satisfied that the admission of Verdeaux's testimony created a danger of unfair prejudice to defendant that significantly outweighed its probative value. *See* R.I. R. Evid. 403. By the time Verdeaux testified, the jury had already heard that the notarization of the TOD form had been improper from both Ranone and Pitassi, a vice president of Janney. Ranone

- 12 -

had acknowledged that the notarization was improper because it had not been notarized in Mandy's presence. Pitassi then affirmed that the document had been falsely notarized by a Janney employee who had notarized the form indicating that she knew Mandy and that he had signed the TOD form in her presence.

The potentially explosive nature of Verdeaux's assertion of her Fifth Amendment privilege upon the jury was certainly not missed by plaintiff's counsel. In his closing argument he argued with respect to the first notarization, "[y]ou've heard the notary come and testify. She pled the Fifth. You'll hear from the Judge, you can draw an adverse inference from that that a crime was committed. As the Judge will instruct you, you can draw an adverse inference."

Shortly thereafter, counsel addressed the second notarization, stating "[t]he notary pled the Fifth, again, about her role in notarizing this second TOD. And as you'll hear, you can draw an adverse inference that, again, criminal conduct occurred, and that's why Kristen Verdeaux took the Fifth." Indeed, the trial justice did instruct the jurors:

> "In this case one of the witnesses invoked her Fifth
> Amendment privilege against self-incrimination. When
> testifying in a civil case, regardless of whether there is a
> pending criminal matter arising out of the same set of
> circumstances, a witness may invoke this constitutional
> protection. The jury in this case is entitled to draw adverse
> inferences when a witness refuses to testify in a civil case
> on this basis, and the witness's silence should be
> considered in light of all other evidence."

We are ever "mindful of Justice Brandeis' classic admonition: 'Silence is often evidence of the most persuasive character.'" *LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997) (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923)).

The possible impact that Verdeaux's invocation of her Fifth Amendment privilege had upon the jury is discernible from its assessment of punitive damages against defendant in favor of the Estate of Lillian Estrella in the amount of $1,560,909.46 on plaintiff's count for conversion.[6] Significantly, the trial justice had instructed the jury that it "may award punitive damages against those defendants if the defendant acted with malice, wantonness, or willfulness of such an extreme nature as to amount to criminality * * *."

This Court has said that "the discretion to exclude evidence under Rule 403 must be exercised sparingly." *State v. Patel*, 949 A.2d 401, 412 (R.I. 2008). "It is only evidence that is marginally relevant and enormously prejudicial that must be excluded." *Id*. at 412-13.

---

[6] The trial justice found that "the jury's finding for Lillian's Estate on the conversion claim is clearly erroneous from the face of the [j]udgment because Lillian's Estate was never in possession of, or entitled to possession of, the Disputed Funds." Based upon this, the trial justice struck "from the [j]udgment the punitive damages award for Lillian's Estate against [defendant] because punitive damages are appropriate only when a party has been awarded compensatory damages."

Here, we are satisfied that Verdeaux's testimony was indeed marginally relevant. Her role in this unseemly saga of elder exploitation had already been clearly established. On two occasions she had improperly, and perhaps illegally, notarized and backdated the TOD forms outside of Mandy's presence. This fact was not in dispute. Both Ranone and Pitassi had testified that Verdeaux had improperly notarized the forms. Her testimony, in which it was likely she would assert her privilege against self-incrimination, would merely be cumulative.

The potential prejudice to defendant, however, was great. Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." R.I. R. Evid. 403; *see also State v. Gaspar*, 982 A.2d 140, 148-49 n.12 (R.I. 2009) ("Only *unfairly* prejudicial evidence is barred under Rule 403—meaning evidence that has 'an undue tendency to suggest a decision on an improper basis.'") (quoting 29 Am. Jur. 2d *Evidence* § 338 at 360 (2008)).

The jury in this case found against defendant on the counts of conversion, tortious interference with inheritance, and obtaining money by false pretenses. In order to make such findings, the jury, necessarily, also found that plaintiff had proven there was a conspiracy between defendant and Ranone.

The defendant's only connection to Ranone's activities was eight telephone calls over a period of approximately one month. Given the timing and the circumstances of the calls, the jury was entitled to draw inferences and find that defendant did conspire with Ranone and was thus responsible for the tortious acts alleged by plaintiff. *See Stubbs v. Taft*, 88 R.I. 462, 468, 149 A.2d 706, 708 (1959) ("In order to establish a [civil] conspiracy evidence must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise.") (quoting 12 C.J.S. *Conspiracy* § 234, at 639).

We are of the opinion, however, that allowing Verdeaux to assert her privilege against self-incrimination in front of the jury impermissibly tipped the scales in favor of plaintiff. It allowed the jury to draw adverse inferences against defendant for the possible criminal liability of Verdeaux, and thus "to base its decision on something other than the established propositions in the case." *Gaspar*, 982 A.2d at 149 n.12. The evidence of any relationship between defendant and Verdeaux was simply too tenuous to quell the danger of unfair prejudice to defendant.

Accordingly, we vacate the jury's verdict and findings as they relate to the defendant and remand the case to the Superior Court for further proceedings consistent with this opinion.

**Declaratory Judgment**

The defendant's second assignment of error concerns the trial justice's decision on plaintiff's post-trial motion for declaratory judgment. The trial justice granted plaintiff's "alternative request for relief" and declared that "(1) Armando Damiani * * * properly opened a Janney Montgomery Scott * * * account; (2) both Transfer on Death forms are invalid and unenforceable; and (3) because the Disputed Funds became a part of Mandy's Janney account, and in the absence of a named beneficiary, the Disputed Funds are an asset of Mandy's estate." On appeal, defendant argues that the trial justice's decision is likewise tainted by the admission of Verdeaux's Fifth Amendment privilege claim. We disagree.

As an initial observation, we are of the firm conviction that the likelihood that a seasoned trial justice would be improperly swayed or confused by hearing a witness claim a privilege against self-incrimination is minimal. *See United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."). Although it is true that the trial justice adopted the jury's findings, it is clear to us, based upon our careful review of the record, that he also articulated independent grounds to support his declarations.

"A Superior Court decision granting or denying declaratory relief is reviewed with great deference by this Court." *Town Houses at Bonnet Shores Condominium*

*Association v. Langlois*, 45 A.3d 577, 581 (R.I. 2012) (quoting *Downey v. Carcieri*, 996 A.2d 1144, 1149 (R.I. 2010)). "When deciding an action for declaratory judgment, a Superior Court justice makes all findings of fact without a jury." *Id.* (quoting *Downey*, 996 A.2d at 1149). "Such factual findings are afforded great weight by this Court, and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Id.* (quoting *Downey*, 996 A.2d at 1149). "A trial justice's findings on questions of law, however, are reviewed *de novo*." *Id.* (quoting *Downey*, 996 A.2d at 1149).

In reaching the first declaration that Mandy properly opened a Janney account, the trial justice relied upon facts that provided far more detail than the conclusory answer that the jury gave to question one on the amended verdict form: "Did Armando Damiani intend to open the account with Janney Montgomery?" Rather, the trial justice found that Mandy and Ranone had mutually assented to enter into an agreement on January 30, 2016, when Ranone presented, and Mandy executed, a client agreement under the express terms of which Janney was instructed "to establish an account on Mandy's behalf to enable Janney to receive Mandy's funds per his instructions." This account was to be opened on Mandy's behalf "irrespective of whether he contemporaneously, or ever, designated a TOD beneficiary."

The trial justice went on to note that, although "subjective intent is largely irrelevant to an inquiry into mutual assent, * * * any doubt about Mandy's subjective understanding was resolved by the jury's response to question [one] on the Verdict Form." Clearly, he gave little weight to a finding that he thought had little bearing on the issue before him.

The trial justice then considered whether the two TODs were valid and enforceable. With respect to the first TOD, he found it to be void "because the absence of a named beneficiary renders the TOD-1 indefinite and unenforceable." He indicated that the enforceability of the TOD turns upon a question of fact "respecting whether Mandy decided to name [defendant] as a beneficiary, thereby curing the indefiniteness." He then concluded that, "[b]ased upon the [c]ourt's credibility determinations and observing testimony, the [c]ourt finds the evidence at trial fails to establish this necessary fact." The trial justice reviewed the evidence, noting the unreliability of Ranone's testimony as well as several other factors that gave him "pause."

So too, the trial justice found the second TOD to be unenforceable based upon Ranone's undue influence on Mandy. The trial justice began his analysis by noting that the issue of undue influence is a fact-intensive inquiry requiring consideration of the totality of circumstances. He reviewed the evidence, demonstrating that Mandy trusted and confided in Ranone and that Ranone stood to benefit "from a

- 19 -

disposition to [defendant]." He also highlighted evidence that showed that "Mandy was physically vulnerable and highly unstable at the time he executed the TOD-2." The trial justice also commented in detail on the evidence of Mandy's weakened state of mind, concluding that "the circumstantial evidence more than satisfies [to] the [c]ourt [that] Ranone pressured Mandy to sign the TOD-2."

The trial justice did emphasize that "[c]rucially, the jury found Ranone breached a fiduciary duty owed to Mandy." It cannot be gainsaid, however, that the trial justice reached a similar conclusion based upon his own thoughtful consideration of the evidence and his own credibility determinations. Thus, we are confident that the factual findings underlying the trial justice's declarations are unsullied by any possible taint that Verdeaux's testimony may have brought to the jury's deliberations. We have no cause to disturb the trial justice's decision on the plaintiff's claim for declaratory judgment.[7]

## III

## Conclusion

For the reasons set forth in this opinion, we affirm paragraph one of the amended judgment declaring, *inter alia*, that "the disputed funds" are an asset of

---

[7] Because we are remanding this case to the Superior Court for further proceedings, a jury or trial justice may make findings that would place this matter in a different factual context. We do not address, therefore, defendant's additional argument with respect to the effect, if any, of the release executed by plaintiff, Ranone, and Janney.

Mandy's estate; we vacate paragraph two awarding the plaintiff compensatory damages and prejudgment interest; and we affirm the amended judgment in all other respects. The record may be returned to the Superior Court for further proceedings consistent with this opinion.

**Justice Robinson, dissenting.** I respectfully bow to the reality that the majority has applied the pertinent legal principles to the facts of this case in a manner that differs radically from my own assessment. Nonetheless, I wish to express my vigorous dissent from the majority's analysis of the Rule 403 issue and from the result that it has reached.[1] In my judgment, the trial justice did not abuse his discretion when he allowed Kristen Verdeaux to invoke her Fifth Amendment privilege in the presence of the jury, and I believe that the jury's verdict should be allowed to stand.

We have stated that "[t]he application of Rule 403 is committed to the sound discretion of the trial justice." *State v. Rios*, 996 A.2d 635, 640 (R.I. 2010); *see also State v. Patel*, 949 A.2d 401, 413 (R.I. 2008); *State v. Silvia*, 898 A.2d 707, 716 (R.I. 2006); *State v. Kaner*, 876 A.2d 1133, 1134 (R.I. 2005) (mem.) ("[T]he issue of whether otherwise relevant evidence should be excluded pursuant to the provisions

---

[1]    I am in agreement with the majority that, taking into account the circumstances summarized in the majority opinion, the Rule 403 objection relative to the testimony of Kristen Verdeaux was adequately preserved for appellate review.

of Rule 403 is * * * left to the sound discretion of the trial justice. * * * And such decisions are reversed by this Court only when there has been an abuse of discretion."); *Soares v. Nationwide Mutual Fire Insurance Company*, 692 A.2d 701, 701-02 (R.I. 1997) (mem.) ("This Court has stated that the admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent."); *State v. Aponte*, 649 A.2d 219, 223 (R.I. 1994) ("The determination of whether evidence is relevant is within the sound discretion of the trial justice, whose relevancy finding will not be overturned except for an abuse of discretion. * * * Although relevant, evidence prejudicial to a defendant to the extent that its negative effect outweighs its probative value may be excluded under Rule 403. * * * The ultimate determination of the effect of evidence lies in the discretion of the trial justice.").

In addition, this Court has been clear that the discretion to exclude evidence pursuant to "Rule 403 must be exercised sparingly"—and then only in situations where the evidence is "marginally relevant and enormously prejudicial * * *." *Patel*, 949 A.2d at 412-13; *see also Silvia*, 898 A.2d at 717 ("We have stated (and have often repeated) that unless evidence is of limited or marginal relevance and enormously prejudicial, the trial justice should not act to exclude it.") (internal quotation marks and brackets omitted); *State v. Moreno*, 996 A.2d 673, 683 (R.I.

2010); *State v. O'Brien*, 774 A.2d 89, 107 (R.I. 2001). *See generally Freeman v. Package Machinery Company*, 865 F.2d 1331, 1340 (1st Cir. 1988) (Selya, J.) ("Only rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect.").[2]

I am completely unable to see how the trial justice in this case abused his discretion in allowing Kristen Verdeaux to invoke her Fifth Amendment privilege in the presence of the jury. She was a significant participant (perhaps somewhat unwillingly) in the alleged conspiratorial scheme, and the jury was properly allowed to hear her testify and to draw appropriate conclusions from her assertion of her Fifth Amendment privilege.

The ultimate issue before the jury in this case was whether Richard Ranone conspired with defendant Steven Damiani to wrongfully convert funds in Mandy's investment account that was originally held by Wells Fargo before being transferred

---

[2]    Rule 403 itself and our jurisprudence relative to it are largely consistent with settled principles of the law of evidence that predate the enactment of the Rules of Evidence. *See, e.g.*, *State v. Fenner*, 503 A.2d 518, 526 (R.I. 1986) (holding, in a case in which the defendant was charged with assault with intent to murder, that the display to the jury of the victim's "wound was not of such a nature as to inflame the jury beyond the probative value that the existence of such a wound should properly have").

to Janney Montgomery Scott LLC (Janney).[3]  As the majority notes, Richard Ranone was Steven Damiani's "longtime financial advisor * * *."  Although the majority indicates that both Steven Damiani and Richard Ranone "testified that their relationship was strictly business," the majority also candidly indicates that plaintiff "presented evidence that, from February 1, 2016, until Mandy's passing [on March 4, 2016], Ranone and defendant spoke on the phone at least eight times."  In addition, there was evidence that one of those calls lasted for seventeen minutes at a time "when Mandy's health started to seriously decline * * *."  I respectfully submit that the majority significantly minimizes the relationship between Richard Ranone and Steven Damiani.

As for Kristen Verdeaux, it should be borne in mind that she was in actuality the agent of Richard Ranone and, as such, was a person who played an essential role in the alleged Ranone-Damiani conspiracy.  Her invocation of her Fifth Amendment privilege and her refusal to testify were certainly relevant to plaintiff's theory that Richard Ranone and Steven Damiani had conspired to cause Mandy's TOD designation to be favorable to Steven Damiani.

Richard Ranone himself testified that, in January of 2016, he had Mandy sign the TOD form in blank without designating who would be the TOD beneficiary,

---

[3]  The majority opinion correctly notes that, in 2016 (the same year in which the alleged tortious conduct took place), Richard Ranone had "recently left his position at Wells Fargo * * *."

without a notary being present, and without a notarial statement attesting to the identity of the signor. He further testified that, on February 1, 2016, Mandy told him that he wanted Steven Damiani to be listed as the TOD beneficiary. The majority opinion then proceeds to describe certain very troubling actions taken by Richard Ranone assisted by Kristen Verdeaux—notably the fact that, after Richard Ranone "added defendant's name onto the blank TOD form," he "had the form backdated and notarized by Kristen Verdeaux, a private-client assistant at Janney."

I am frankly unable to understand why the testimony of Kristen Verdeaux (including her decision to assert her Fifth Amendment privilege) should have been excluded pursuant to Rule 403. The majority describes Kristen Verdeaux as being "a private-client assistant at Janney" and also as "the office notary * * *." And, as just noted, the majority opinion also indicates that Richard Ranone "had enlisted Verdeaux to backdate and sign the notary clause." While Kristen Verdeaux was not named as a defendant in this case, her role in the alleged conspiracy between Richard Ranone and Steven Damiani was far from being incidental. Her action regarding the notarizations was part and parcel of what Richard Ranone allegedly sought to accomplish—namely, to have Mandy's funds be transferred to Steven Damiani upon Mandy's death pursuant to the TOD mechanism. Kristen Verdeaux may have been only an agent of Richard Ranone and Janney, but she was an agent who played a critical role in the scenario that had the potential of being profitable for Steven

Damiani and Richard Ranone as well.[4]  And she was an agent who, on at least two occasions, performed an act concerning which she felt called upon to invoke her Fifth Amendment privilege.

With all due respect to the majority, I fail to understand the logic of its holding that Kristen Verdeaux's invocation of her Fifth Amendment privilege should have been excluded pursuant to Rule 403.  The invocation of that privilege indubitably added to the portrait of grave malfeasance that plaintiff wished to present to the jury.  But why should plaintiff have been barred from painting that picture?  A civil action replete with allegations of conspiracy is, after all, no day at the beach. *See Onujiogu v. United States*, 817 F.2d 3, 6 (1st Cir. 1987) ("The fact that a piece of evidence hurts a party's chances does not mean it should automatically be excluded.  If that were true, there would be precious little left in the way of probative evidence in any case."); *see also United States v. Rodriguez-Estrada*, 877 F.2d 153, 156 (1st Cir. 1989) ("By design, all evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided.").

We have repeatedly emphasized the abuse of discretion standard in the context of Rule 403.  Indeed, it is extremely rare for the Court to reverse the trial justice's discretionary decision in that context.  Frankly, I would be inclined to say that the

---

[4]  It should be remembered that Richard Ranone's compensation from Janney was related to the amount of assets under his supervision, and he was the "longtime financial advisor" of Steven Damiani.

trial justice had abused his discretion if he had decided to exclude the testimony of Kristen Verdeaux pursuant to Rule 403.

I do not see this as a close case. As previously emphasized, it is important to recall that "[w]e have said that a trial justice's discretion to exclude evidence under Rule 403 must be used sparingly." *State v. DeJesus*, 947 A.2d 873, 883 (R.I. 2008). We have also expressly stated that "[i]t is only evidence that is marginally relevant and enormously prejudicial that must be excluded." *Patel*, 949 A.2d at 412-13. It is my definite view that the appearance of Kristen Verdeaux as a witness at trial and her invocation of her Fifth Amendment privilege had great potential probative value. In my judgment, that testimony was neither "marginally relevant" nor "enormously prejudicial."[5]

Her appearance as a witness and her invocation of the Fifth Amendment privilege were nothing more nor less than a piece of the overall evidence marshaled by plaintiff to convince the jury of the existence of a nefarious conspiracy. This Court in *Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188 (R.I. 1994), sagaciously observed that "[t]he determination of the value of evidence should normally be placed in the control of the party who offers it." *Wells*, 635 A.2d at 1193; *see also Boscia v. Sharples*, 860 A.2d 674, 678 (R.I. 2004). In all probability the testimony

---

[5]    *See Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188, 1193 (R.I. 1994); *see also State v. Silvia*, 898 A.2d 707, 717 (R.I. 2006).

of Kristen Verdeaux and her assertion of her Fifth Amendment privilege had an impact on the jury, but properly so. *See Wells*, 635 A.2d at 1193 ("Naturally this evidence was prejudicial to [the adverse party], but properly so.").

Kristen Verdeaux was a relevant participant in what plaintiff alleged was a conspiracy to wrongfully bestow a significant sum on Steven Damiani. The plaintiff had every right to expose to the jury the chain of events that allegedly constituted the conspiracy; and Kristen Verdeaux was an important link in that chain. Her testimony spoke to the intellects of the jurors, not to their emotions. *See State v. Nightingale*, 8 A.3d 136, 141 (N.H. 2010) ("Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case."); 29 Am. Jur. 2d *Evidence* § 326 at 382 (2d ed. 2019) ("The critical inquiry in determining whether evidence is unfairly prejudicial is whether the evidence improperly appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact."). There was nothing inherently emotional or improperly provocative about Kristen Verdeaux's invocation of her Fifth Amendment privilege. That invocation was a cold hard fact; and the jury was entitled, as a matter of law, to draw an adverse inference from that invocation.

While I have not succeeded in convincing the majority that the trial justice acted well within his discretion with respect to the testimony of Kristen Verdeaux, I feel obliged to state that for me it is surpassingly difficult to reconcile the Court's ruling in this case with traditional notions of what may properly be presented to the jury by the opposing parties in our adversary system of justice.[6] It is clear to me, after carefully reviewing the record, that there was a completely proper evidentiary basis upon which the jury could base its finding that there was an unsavory conspiracy scheme between Richard Ranone and Steven Damiani.

For these reasons, I respectfully but very vigorously dissent.

---

[6] *See Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944) ("[The jury] weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.") (quoted in *Joplin v. Cassin*, 252 A.3d 271, 281-82 (R.I. 2021)).



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Robert M. Estrella, as the Executor of the Estate of Armando Damiani and the Executor of the Estate of Lillian Estrella v. Janney Montgomery Scott LLC et al. |
| **Case Number** | No. 2021-56-Appeal. (PC 17-5227) |
| **Date Opinion Filed** | June 22, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For the Plaintiff:<br><br>Thomas L. Mirza, Esq. |
| | For the Defendant:<br><br>Thomas M. Dickinson, Esq. |

SU-CMS-02A (revised November 2022)